IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD R.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 C 4970 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§416(i), 423, over five years ago. (Administrative Record (R.) 218-24). He alleged that he became disabled as of July 1, 2013 (R. 241), due to "cervical spinal stenosis, cervical disc displacement, cervical radiculitis, herniated disc, broken [coccyx], depression, osteoarthritis in right and left knee, knee replacement recommended both knees, degenerative disc disease." (R, 244). Over the next three years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. In this case, as the appeals council granted review of the ALJ's decision, it is the appeals council's decision that is before the court for review.[2] See 20 C.F.R. §§404.955; 404.979; *Sims v. Apfel*, 530 U.S. 103,

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

[2] This case has presented a bit of a challenge for both sides. First, the parties ignored the initial Order that required them to file a stipulated statement of facts. [Dkt. #9]. A second Order pointed out the parties' error and directed their attention to the original Order, going so far as to quote the pertinent portion of the

(continued...)

106–07 (2000). Plaintiff filed suit under 42 U.S.C. § 405(g) on July 24, 2019. [Dkt. #1]. The parties consented to the jurisdiction of Magistrate Judge Rowland pursuant to 28 U.S.C. § 636(c) on September 27, 2019 [Dkt. # 6], and the Executive committee reassigned the case to her on October 2, 2019. [Dkt. #7]. The very next day, the Executive Committee again reassigned the case here. [Dkt. #8]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

## I.

### A.

Plaintiff was born on January 25, 1968, and so was 45 at the time he claims he became unable to work. (R. 218). He is a high school graduate. (R. 245). Plaintiff has an excellent work record, working solidly as a union carpenter from 1986 through 2010, and throughout 2012 and 2013. (R. 226-27, 270). As his body began to deteriorate due to osteoarthritis, he moved from residential work to commercial work, which was a bit less taxing. (R. 58). A while later, between his knees and back, that work got to be too much for him. (R. 59). By that point, he had had back surgery and one knee replaced. (R. 60). Those procedures reduced the pain somewhat, but didn't make him better,

---

[2](...continued)
original Order at length. [Dkt. #12]. The parties then filed the required, combined stipulated statement of facts. [Dkt. #13]. On the very first page of that statement, in the second paragraph, the parties state that the Appeals Council denied review of the ALJ's decision and that, as a result, the ALJ's decision was final and was the decision before the court for review. [Dkt. #13, Par. 2]. None of that, as it happens, was true. The Appeals Council *granted* review and it is the Appeals Council's decision that is final and before the court for review. (R. 1-10); *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992). Several weeks later, the parties filed a second combined statement of facts, correcting this mistake, at least. But, that same day, counsel for the defendant filed his response brief and, remarkably, and surprisingly claimed that the "plaintiff asserts that the Appeals Council denied review, in fact it granted review and issued a decision on May 29, 2019." [Dkt. #21, at 1]. But, of course, counsel for defendant stipulated to that "fact" in the parties' combined statement of facts. [Dkt. #13, Par. 2]. Neither side talks much about the Appeals Council's decision at all in their briefs, concentrating on the ALJ's decision. And, as the Appeals Council adopted, albeit without analysis, nearly all of the ALJ's findings (R. 4-8), the ALJ's decision will be the court's focus here.

and so he decided against additional surgery at that time. (R. 61, 63). His back also bothered him when sitting, and he had a limited education, so there did not seem much else he was capable of doing at that point but odd jobs here and there. (R. 62-64).

The medical record in this case is typically large – about 850 pages – typically unorganized, and typically, very little of it bears on whether plaintiff is disabled. (R. 346-1205). Even according to the plaintiff, over 90% of it is not pertinent to his claims for disability benefits, as he cites just 65 pages of it as supportive of his claim for disability in his brief [Dkt. # 14, at 4-9]. The Commissioner refers to no more that two dozen pages. [Dkt. #21, at 5-10]. Thus, a long and tedious summary of the files will be dispensed with, and the medical record will be referenced only insofar as is necessary to address the parties' arguments. Suffice it to say, over two decades of manual labor has left plaintiff with predictable arthritic issues in his neck, back and knees. Additionally, he has severe psychological problems, as the ALJ found, that leave him moderately impaired in a couple of areas of functioning.

**B.**

After an administrative hearing, at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff was not disabled. The ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical spine and lumbar pine· osteoarthritis of the right knee, resulting in a total knee arthroplasty; bipolar disorder; anxiety; and cannabis dependence. (R. 33). Plaintiff's other impairments – morbid obesity and osteoarthritis of the left knee – were deemed nonsevere. (R. 18). The ALJ then found that plaintiff's impairments, either singly or in combination, did not meet or equal a listed impairment assumed to be disabling in the Commissioner's listings, referring specifically to Listing 1.02 covering major dysfunction of joints, Listing 1.04 covering disorders of the spine, Listing 12.04 covering depression, bipolar and related

3

disorder, and 12.06 covering anxiety and obsessive compulsive disorder. (R. 34). The ALJ found that plaintiff's psychological impairments left him with moderate functional limitations in two areas: interacting with others and concentrating, persisting, or maintaining pace. (R. 35). The ALJ found the plaintiff minimally limited in two others: understanding, remembering or applying information, and adapting or managing oneself. (R. 35-36).

  The ALJ then determined that plaintiff could perform light work – which requires lifting/carrying 20 pounds occasionally, 10 pounds frequently, and a good deal of walking and standing – except that he could only "occasionally balance, stoop, kneel, crouch, crawl, and climb. He can understand, remember, and carry out simple, routine tasks, make simple work-related decisions and adapt to routine workplace changes.

  It was found that he could tolerate occasional interaction with supervisors, coworkers, and the public. He "can persist in such activities with adequate pace and perseverance." (R. 35-36). Next, the ALJ found that the plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision. (R. 36). Specifically, the ALJ said there was no evidence that the exertional activities required by light work were beyond the plaintiff and the ALJ added that the plaintiff's "reported activities further support his ability to perform light work" (R. 37), citing plaintiff driving snow removal crews in the winter, light household chores, going to the store, traveling to Kansas City, and driving RC cars. (R. 37). The ALJ later added that activities like helping a friend remove paper covering from a floor, working on his deck, and around his mother-in-law's home, were consistent with an "ability to perform light work." (R. 38). Along the way, the ALJ reviewed the medical evidence and plaintiff's course of treatment for his various impairments, including medication and multiple

injections over the course of 3-4 years, and knee surgery for his physical impairments, and medication for his mental impairments. (R. 36-38).

The ALJ then addressed the medical opinion evidence. She gave great weight to the opinions of the two state agency physicians who reviewed the medical evidence because they were based on knowledge of the regulations, consistent with the medical evidence and internally consistent. (R. 38-39). She gave limited weight to a third-party report from plaintiff's wife as it was generally consistent with the medical evidence but not with allegations of total disability and applicable rules and regulations. (R. 39).

Next, the ALJ, relying on the testimony of the vocational expert, found that, given his residual functional capacity, the plaintiff could perform a substantial number of light jobs, examples being housekeeper cleaner (DOT 323.687-014; 115,00 jobs in the national economy), cleaner/polisher ( DOT 709.687-010; 24,000 jobs in the national economy), and mail clerk (DOT 209.687-026; 32,000 jobs in the national economy). (R.40). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 40).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill,* – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material

conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

The substantial evidence standard is a low hurdle to negotiate. *Biestek*, 139 S. Ct. at 1154. But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir. 2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). On the other hand, the Seventh Circuit has described the logical bridge requirement as "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir.2008). The subjectivity of the requirement – one reader's Mackinac Bridge is another's rickety rope and rotting wood nightmare – often makes it difficult for ALJs hoping to write acceptable decisions that stand up to judicial scrutiny when challenged.

### III.

As it happens, review of the ALJ's decision in this case, and decision to remand it to the Commissioner, turns on the logical bridge requirement. There are some flaws in the path of the ALJ's reasoning that do not allow a reviewing court to trace it. To begin with, there is the ALJ's consideration of the plaintiff's subjective complaints. ALJ credibility determinations are given deference because ALJs are in a special position to hear, see, and assess witnesses. *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir.2012). Therefore, an ALJ's credibility determination is not to be overturned unless it lacks any explanation or support. *Murphy v. Colvin*, 759 F.3d 811, 815–16 (7th Cir. 2014). But, in drawing her conclusions, the ALJ must "explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir.2011).

In discussing plaintiff's activities, the ALJ locked on to the fact that a couple of winters the plaintiff drove a snow removal/ salt crew around. (R. 38). The ALJ noted that those work days were long, and plaintiff would go home, sleep for an hour, and go back to work. (R. 38). The ALJ said that activity was "inconsistent with a finding of disability." (R.38). But "[p]art-time work is not good evidence of ability to engage in full-time employment, . . . ." *Vanprooyen v. Berryhill*, 864 F.3d 567, 571 (7th Cir. 2017). And the snow crew driver activity can't even be considered a part-time job. In fact it was barely seasonal. Plaintiff only got called to work when there was a "significant snow event." (R. 52-53). There are few of those in a winter. So, in essence, the ALJ was basing her rejection of plaintiff's allegations on plaintiff's ability to sit in a pick-up truck ten days a year. And, contrary to the ALJ's characterization of the evidence, plaintiff *did* testify he had problems doing it. (R. 62-63).

7

Beyond that, the ALJ briefly mentioned that the plaintiff testified to being able to do some light housework, drive his mother-in-law to the store, travel to Kansas City on one occasion to be with his father, and race his remote control car once a week. (R. 38). The ALJ tendentiously called this a "wide variety of activities" (R. 38), which is, to say the least, a stretch. She also said these activities were "consistent with an ability to perform light unskilled work activity . . . ." (R. 38). Of course, they are not. *See Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016) (concluding that the claimant's "persistence in struggling through household chores despite her pain does not mean, as the ALJ extrapolated, that she can manage the requirements of the work-place" because a person performing chores, unlike an employee, has more flexibility "and is not held to a minimum standard of performance"); *Hill v. Colvin*, 807 F.3d 862, 865, 869 (7th Cir. 2015) (warning against equating the activities of daily living—like babysitting, caring for pets, going to church, visiting with family members, and doing household chores—with those of a full-time job); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons...and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.").

The ALJ also said the claimant's minimal and unchallenging activities were "inconsistent with the disabling limitations [plaintiff] alleged." (R. 38). No explanation supports this *ipse dixit*, and they certainly don't appear to be inconsistent with limited ability to sit, stand, walk, or lift. As such the ALJ had to explain what she was thinking. *See Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017)("But the ALJ did not explain why doing these household chores was inconsistent with [plaintiff's] description

of her pain and limited mobility. Nor is any inconsistency obvious, so the ALJ did not substantiate the finding that [plaintiff's] daily activities reveal any exaggeration of [plaintiff's] limitations."); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir.2011) ("An ALJ may consider a claimant's daily activities when assessing credibility, but ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence."). Again, she didn't.

But delving deeper, the ALJ's line of reasoning isn't the only problem; she ignored or mischaracterized portions of the record. It should be noted that plaintiff visited his father because he (the father) had medical issues; he even postponed his own surgery to do so. He had only made the trip four times in twenty years. (R. 63). How that counts against the claimant is not apparent. Of course the claimant is going to make a sacrifice to tend to his father. More importantly, how strenuous could it have been? As the Seventh Circuit remarked in *Murphy*:

> The ALJ's assessment might have withstood scrutiny if, upon questioning Murphy and her husband, the ALJ found evidence that Murphy, for example, went on a whitewater rafting vacation, walked with lions in Africa, or ran with the bulls in Spain. If Murphy was able to do these types of activities, legitimate questions would be raised as to the veracity of her claims.

*Murphy*, 759 F.3d at 817.

Also, there is no testimony about chores, shopping or remote control car racing in the transcript of the administrative hearing. So, without a citation to someplace in the 1400-page record, the court can only guess where the ALJ drew these tidbits from. We do know that, in a function report he filled out in November 2015, plaintiff indicated that he no longer did remote control car racing, or any of his former hobbies. (R. 304). Grocery shopping was once a week, doing dishes and laundry took him much longer than before, and he could no longer do yard work. His children helped with some chores. He could not bend to put his socks on. (R. 301-302). So even the few activities the ALJ touted turn out

9

to be extremely limited and do not support the ALJ's conclusions. *See Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016)("'[a]n ALJ cannot disregard a claimant's limitations in performing' daily activities."); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008). The record paints quite a different picture than the ALJ did, meaning that the whole basis for the ALJ's rejection of plaintiff's subjective complaints is faulty.

Clearly, the ALJ's assessment of the plaintiff's subjective complaints requires a remand, but it is worthwhile to discuss some additional points. The first has to do with the path from the ALJ's finding that plaintiff was moderately impaired in his concentration, persistence, or pace, to the hypothetical she posed to the vocational expert, as well as her residual functional capacity finding. In other words, this is another in a long line of CPP cases – "concentration, persistence, and pace." As is very often the case, the ALJ found a moderate limitation in CPP, did not mention this in her residual functional capacity determination, or in her hypothetical to the vocational expert, opting instead to conclude that the plaintiff could "carry out simple, routine tasks." (R. 35, 70). The question is whether "simple, routine tasks" accounts for a moderate limitation in CPP. The answer from the Seventh Circuit, time and time again, has been no. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020)(". . . the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace."); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (reversing and explaining that the observation that someone can perform simple tasks says nothing about whether she can do so over the course of a full workday); *Mischler v. Berryhill*, 766 Fed.Appx. 369, 376 (7th Cir. 2019)("... 'simple routine and repetitive tasks' in a low stress job ... fails to account for the 'moderate' difficulties in concentration, persistence, and pace ...."); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019)("... we have "repeatedly rejected the notion that a hypothetical ... confining the

claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."); *Winsted v. Berryhill*, 915 F.3d 466, 471 (7th Cir. 2019)("Though particular words need not be incanted, we cannot look at the absence of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question.").

      The ALJ did say that plaintiff can "persist in such activities with adequate pace and perseverance" (35, 70), but there are difficulties with that as well. One, it says nothing about the ability to concentrate. Concentration is left to be covered by "simple, routine tasks" and, again, that isn't sufficient. It doesn't rescue the ALJ's hypothetical or residual functional capacity finding. Two, if the plaintiff does have a moderate limitation in persistence and/or pace, as the ALJ found, how do we get from that to "adequate" persistence and pace? The only evidence the ALJ pointed to demonstrate that plaintiff could persist or maintain pace was racing remote control cars one day a week, driving the snow removal crew, and removing taped paper from a floor. (R. 38). That's a pretty meager record to sustain the ALJ's finding. As already discussed, the plaintiff does not race remote control cars, he said he no longer did it. (R. 304). Even when he did, he did so only occasionally; even the ALJ said it was just once a week. (R. 38, 523). The snow crew driving job involved driving to stops and sitting in a truck doing nothing, while the crew shoveled and put down salt. And it was only a few days a year! The ALJ gives the reader no clue where the removing paper from the floor comes from. (R.38). It's not in the transcript of the administrative hearing, and in his function report, the plaintiff said he can't bend over or kneel, not even to put on socks. (R. 300-01). So, in other words, there is no evidence to support the ALJ conclusion that, despite a moderate limitation in his ability to maintain persistence and pace, he could nevertheless maintain persistence and pace adequately to hold down a job, eight hours a day, five

days a week, fifty weeks a year.

Beyond that, I had some confusion with a couple of the arguments advanced in plaintiff's brief, in case these issues arise again on remand. First, the plaintiff argues that the ALJ based her decision on an incorrect date last insured. According to plaintiff, this resulted in the ALJ failing to adjudicate a six-month period – January 1-June 30, 2018 – during which the plaintiff was "closely approaching advanced age." [Dkt. #14, at 3]. It did. But the Appeals Council found that the ALJ got the date last insured wrong, and determined that the actual date last insured was September 30, 2018. (R. 5). The Appeals Council went on to state that there was an unadjudicated period from December 31, 2017 – the date the ALJ thought was the date last insured – through February 8, 2018 – the date of the ALJ's decision. (R. 5). The Appeals Council then found that the two-month period the ALJ missed – December 31, 2017 through February 8, 2018 – was too short to merit consideration. (R. 5). The Appeals Council then ignored the several months from February 8, 2018, through September 30, 2018. (R. 7-8). Plaintiff is unperturbed by that, however, so any argument he may have made regarding it is waived.

What remains is unclear. In his opening brief, the plaintiff seemed to contend that the miss on the date last insured put him in an older age category, which in turn would have meant he was disabled under the Medical-Vocational Guidelines. [Dkt. # 14, at 3]. But to reach that result, one would also have to drop plaintiff to a lower residual functional capacity category: sedentary work down from light work. [Dkt. #14, at 3]. Plaintiff abandons this Grid switch argument in his reply brief, focusing on the fact that the Appeals Council didn't consider the extra two months, it simply considered them too short. [Dkt. # 14, at 2-3].

But, the plaintiff hasn't submitted any evidence about that two-month period. The evidence before the ALJ ran through only August 28, 2017. (R. 1186, 1202-05). Even though the ALJ got the

date last insured wrong, she considered this evidence as part of the relevant time period. There was no evidence from the extra couple of months, and the evidence plaintiff submitted to the Appeals Council was from an examination on February 15, 2019 (R. 27), over a year after the period under consideration, as the Appeals Council indicated. (R. 4). Consequently, plaintiff's Grid switch/date last insured argument – changing as it does from one brief to the next – had no place in these proceedings.

Second, the plaintiff bases another of his arguments on his assertion that "[t]he ALJ recogniz[ed, in her hypotheticals, that Plaintiff might only be able to sustain the mental demands of full time work for two thirds of a workweek." [Dkt. # 11, at 11, 14-15]. But this is a significant mischaracterization of the record. It was *the plaintiff's counsel* who posed that hypothetical, not the ALJ. (R. 72-73). And that distortion appears twice in the plaintiff's brief. We assume that it was not intentional. Nonetheless, carelessness like this often loses cases. *See, e.g.*, *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010). Factual accuracy is critical if the system is to operate fairly and impartially.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment [Dkt. #10] is granted insofar as this case is remanded to the Commissioner, and the Commissioner's motion for summary judgment [Dkt. #20] is denied.

Next, the plaintiff finds fault with the Appeals Council's/ALJ's finding that he has a moderate limitation in interacting with others and a moderate limitation in concentrating, persisting, or maintaining pace. The plaintiff thinks the ALJ ought to have found that his limitation in interacting with others, and in concentrating, persisting, or maintaining pace, was more severe than "moderate." The ALJ seemed acutely aware of this, recognizing, in her hypotheticals, that Plaintiff might only be able to sustain the mental demands of full time work for two thirds of a workweek. R. 72-73. But that was

13

plaintiff's counsel, not the ALJ (R. 72-73).

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 7/8/20